# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 27, 2004      Decided December 7, 2004

No. 03-1336

EMR NETWORK,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Communications Commission

———

*Whitney North Seymour, Jr.* argued the cause for petitioner. With him on the brief was *James R. Hobson*.

*Nandan M. Joshi*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *R. Hewitt Pate*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Andrea Limmer*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, *Daniel M. Armstrong*, Associate General Counsel, and *Joel Marcus*, Counsel.

Before: EDWARDS and GARLAND, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: A variety of facilities and products subject to Federal Communications Commission regulation, including towers and other facilities for radio, TV, and cell phone communications, and cell phones themselves, transmit radio signals—and with them radiofrequency ("RF") radiation. At certain levels RF radiation may have adverse "thermal" health effects, caused by heating human tissue. The Commission has issued regulatory guidelines based on its assessment of those effects.

Non-thermal effects are also of potential concern, but in its last review of its RF radiation guidelines the Commission declined to tighten its restrictions on that account. See *Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 12 FCC Rcd 13494, 13505, ¶ 31 (1997). Its decision, resting on the scientific uncertainty about such effects and the costs of imposing restrictions without a clearer showing of effects, was upheld by the Second Circuit as within the Commission's discretion. See *Cellular Phone Taskforce v. FCC,* 205 F.3d 82, 90-92 (2d Cir. 2000).

The year after the Second Circuit decision, EMR Network filed a petition asking the Commission to initiate an inquiry on the need to revise the regulations to address non-thermal effects. It relied principally on a letter from members of the Radiofrequency Interagency Work Group, which is made up of staff members from various federal agencies, including the FCC, and which studies the effects of RF radiation. Joint Appendix ("J.A.") 23. The letter, which didn't represent the official policy or position of member agencies, laid out a number of issues that the staff members

believed "need to be addressed to provide a strong and credible rationale to support RF exposure guidelines." J.A. 22. The letter expressly declined to assign priorities to the issues; and in no way did it sound the tocsin for new regulations. After the Office of Engineering & Technology rejected EMR's initial petition, but before the Commission ruled on the issue, EMR submitted several academic studies discussing potential health effects from exposure to RF radiation at levels lower than are currently permissible without additional environmental analysis. See 47 C.F.R. §§ 1.1306, 1.1307. The Commission affirmed the dismissal of EMR's petition, concluding that there was "no compelling evidence" that a rulemaking was warranted. *EMR Network Petition for Inquiry To Consider Amendment of Parts 1 and 2 Regarding Environmental Effects of Radiofrequency Radiation*, 18 FCC Rcd 16822, 16827, ¶ 12 (2003).

EMR now petitions for review of the Commission's order, arguing principally that the Commission has violated its duty under § 102 of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, to ensure that agencies consider the environmental effects of their decisions. We affirm the Commission's order.

* * *

Section 102(2)(C) of NEPA requires a federal agency to prepare an Environmental Impact Statement ("EIS") as part of any "proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In appropriate cases an agency can instead prepare an Environmental Assessment, followed by a Finding of No Significant Impact. See 40 C.F.R. §§ 1501.4(a)-(e); see also *Dep't of Transportation v. Public Citizen*, 124 S. Ct. 2204, 2209-10 (2004); *Sierra Club*

*v. U.S. Dep't of Transportation*, 753 F.2d 120, 126 (D.C. Cir. 1985). Although the FCC had not prepared a formal EIS in making its latest revisions to its RF radiation rules, *Cellular Phone Taskforce* held that it had "functionally" satisfied NEPA's requirements "in form and substance." 205 F.3d at 94-95.

EMR accordingly focuses on agencies' NEPA duties when new evidence turns up after completion of an EIS (or equivalent), citing *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989). *Marsh* considered a claim that the Corps of Engineers had neglected its NEPA duties when, one third of the way through construction of a dam, it received information arguably suggesting that the dam would cause more severe environmental harm than had been supposed at the time the EIS had been completed and construction approved. Regulations require an agency to prepare a Supplemental Environmental Impact Statement when "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts," 40 C.F.R. § 1502.9(c)(1)(ii), and the parties agreed that agencies were required to take a "hard look" at evidence suggesting that this standard had been met. *Marsh*, 490 U.S. at 370-74. The Court rejected plaintiffs' view that a reviewing court should examine the evidence afresh, ruling instead that the usual "arbitrary and capricious" standard should apply. *Id*. at 375-78. EMR suggests that the current circumstances are a "fair parallel" to those in *Marsh*. Petitioner's Br. at 36.

The FCC argues strenuously that it satisfied the "hard look" requirement, but we need not resolve that issue. In *Norton v. Southern Utah Wilderness Alliance*, 124 S. Ct. 2373 (2004), the Court declined to apply *Marsh* where the federal action in question was approval of a land use plan. Unlike the

dam in *Marsh*, that "action" was complete when the new information was received. *Id*. at 2384-85. Presumably later actions pursuant to the plan might be significant enough to require NEPA filings, just as some FCC actions relating to RF radiation will need new environmental studies—including, for example, the circumstances where the current regulations call for such studies. But the regulations having been adopted, there is at the moment no "ongoing" federal action, *id*. at 2385, and no duty to supplement the agency's prior environmental inquiries.

Thus we review the Commission's rejection of EMR's petition as we would agency rejection of any petition to initiate a rulemaking. Such a decision is to be overturned if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4 (D.C. Cir. 1987). As applied to refusals to initiate rulemakings, this standard is "at the high end of the range" of deference, see *American Horse*, 812 F.2d at 4-5, and an agency refusal is overturned only in the "rarest and most compelling of circumstances," *WWHT, Inc. v. FCC*, 656 F.2d 807, 818 (D.C. Cir. 1981).

EMR argues that the Commission's refusal to undertake a rulemaking constitutes an improper delegation of its NEPA duties to private organizations and government agencies. Indeed, in formulating its RF regulations, and in deciding whether to re-open the issue, the Commission has relied on other government agencies and non-governmental expert organizations with specific expertise on the health effects of RF radiation. See *Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 8 FCC Rcd 2849, 2849, ¶ 1 (1993). EMR says this is improper, citing cases requiring that a federal agency maintain

responsibility for the final conclusion of an EIS. See, e.g., *Sierra Club v. Sigler*, 695 F.2d 957, 962 n.3 (5th Cir. 1983) (agency may not rubberstamp a consultant-prepared EIS); *Essex County Preservation Ass'n v. Campbell*, 536 F.2d 956, 960 (1st Cir. 1976); *Sierra Club v. Lynn*, 502 F.2d 43, 58-59 (5th Cir. 1974); see also *Communities Against Railway Expansion, Inc. v. FAA*, 355 F.3d 678, 686 (D.C. Cir. 2004).

The Commission appears not to have abdicated its responsibilities, but rather to have properly credited outside experts. It found that the Institute of Electrical and Electronic Engineers (a non-profit entity with members from government, industry, and the academy), and the "federal agencies and their personnel that participate in its committees and subgroups," are "composed of leading experts in this area," and that there was "no other comparable group of experts with which to consult or upon which to rely." 18 FCC Rcd at 16826, ¶ 10. EMR does not contest these propositions. In upholding the earlier decision not to tighten regulation on account of non-thermal effects, the Second Circuit rejected a claim that the Commission had improperly relied on expert standard-setting organizations. *Cellular Phone Taskforce*, 205 F.3d at 90. Moreover, as the Environmental Protection Agency is "the agency with primacy in evaluating environmental impacts," *id*. at 91, the FCC's decision not to leap in, at a time when the EPA (and other agencies) saw no compelling case for action, appears to represent the sort of priority-setting in the use of agency resources that is least subject to second-guessing by courts. See, e.g., *American Horse*, 812 F.2d at 4. Finally, the Commission's determination to keep an eye on developments in other expert agencies suggests that here, as in *Cellular Phone Taskforce*, the Commission has an adequate "mechanism in place for accommodating changes in scientific knowledge." 205 F.3d at 91.

In what is at a minimum in "tension" with its abdication claim, EMR asserts that the Commission has also violated its duty to coordinate with other federal agencies to facilitate NEPA's environmental goals. See 40 C.F.R. §§ 1500.5(b), 1501.1(b). In any event, the argument was not presented to the Commission and therefore we may not address it. 47 U.S.C. § 405; see also *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1182 (D.C. Cir. 2003).

EMR's submissions implicitly raise one of the strongest potential bases for overturning an agency's refusal to initiate a rulemaking—that "a significant factual predicate of a prior decision on the subject . . . has been removed." *WWHT,* 656 F.2d at 819; see also *American Horse*, 812 F.2d at 5; *Geller v. FCC*, 610 F.2d 973, 980 (D.C. Cir. 1979). EMR suggests that the studies it submitted (after the decision of the Office of Engineering & Technology) show that exposure to RF radiation is unsafe at levels too low to cause thermal effects. But the articles submitted are nothing if not tentative. One, for example, hypothesizes a mechanism by which cell phone radiation might promote cancer, but also notes that "[t]o date, there is limited scientific evidence of health issues, and no mechanism by which mobile phone radiation could influence cancer development." Peter W. French et al., *Mobile Phones, Heat Shock Proteins and Cancer*, 67 Differentiation 93, 93 (2000). We find nothing in those studies so strongly evidencing risk as to call into question the Commission's decision to maintain a stance of what appears to be watchful waiting.

In its reply brief EMR tries to shore up its factual case by offering additional reports of possible non-thermal risks. As the reports were not submitted to the Commission before it acted, they cannot be a basis for overturning the order. 47 U.S.C. § 405; see also *AT&T Wireless Services, Inc. v. FCC*,

365 F.3d 1095, 1101 (D.C. Cir. 2004). The Commission's motion to strike one of these references is dismissed as moot.

As the Commission's decision not to initiate an inquiry neither violated NEPA nor was otherwise an abuse of discretion, the petition for review is

*Denied*.