08-3903-ag
New York v. Nuclear Regulatory Commission

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: October 23, 2009      Decided: December 21, 2009)

Docket Nos. 08-3903-ag(L), 08-4833-ag(con), 08-5571-ag(con)

- - - - - - - - - - - - - - - - - - - - -x

THE STATE OF NEW YORK; RICHARD BLUMENTHAL,
Attorney General of Connecticut; and the
COMMONWEALTH OF MASSACHUSETTS,

                    Petitioners,

          - v.-

UNITED STATES NUCLEAR REGULATORY
COMMISSION; and the UNITED STATES OF
AMERICA,

                    Respondents,

                    and

ENTERGY NUCLEAR OPERATIONS INC., et al.,

                    Intervenor-Respondents.

- - - - - - - - - - - - - - - - - - - - -x


     Before:       JACOBS, Chief Judge, KEARSE, Circuit
                   Judge, and GARDEPHE,* District Judge.

_____

     * Paul G. Gardephe, of the United States District Court
for the Southern District of New York, sitting by
designation.

Petition for review of a decision of the Nuclear Regulatory Commission denying rulemaking petitions filed by Massachusetts and California. As the Nuclear Regulatory Commission has given due consideration to the relevant studies concerning the rulemaking petitions, we must defer to its expertise in determining the proper risk level associated with the storage of nuclear material in spent fuel pools, and therefore deny the petition to review the Nuclear Regulatory Commission's decision.

JOHN J. SIPOS (Monica Wagner, Andrew M. Cuomo, Barbara D. Underwood, Benjamin N. Gutman, Katherine Kennedy, Janice A. Dean on the brief), State of New York, Albany, NY; Matthew Brock, Martha Coakley, Commonwealth of Massachusetts, Boston, MA; Richard Blumenthal, Robert D. Snook, State of Connecticut, Hartford, CT, for Petitioners.

JAMES E. ADLER (Stephen G. Burns, John F. Cordes, Jr., Sean D. Croston on the brief), U.S. Nuclear Regulatory Commission, Washington, DC; John E. Arbab, John C. Cruden, Department of Justice, Washington, DC, for Respondents.

David R. Lewis, Pillsbury Winthrop, Washington, DC; CATHERINE E. STETSON (Jessica L. Ellsworth on the brief), Hogan & Hartson LLP, Washington, DC; William C. Dennis, Entergy Nuclear

Operations Inc., White Plains, NY, for Intervenor-Respondents.

Jerry Bonanno, Ellen C. Ginsberg, Michael A. Bauser, Anne W. Cottingham, Counsel for Nuclear Energy Institute, Inc., Washington, DC, for Amicus Curiae Nuclear Energy Institute, Inc. in support of Federal Respondents, Intervenor-Respondents, and Affirmance.

Edmund G. Brown, Jr., Ken Alex, Gordon Burns, Susan Durbin, Brian W. Hembacher, Attorneys for State of California, Los Angeles, CA, for Amicus Curiae State of California, ex rel. Edmund G. Brown, Jr., Attorney General, in support of Petitioners.

PER CURIAM:

The States of New York and Connecticut and the Commonwealth of Massachusetts (collectively the "States") petition for review of a decision of the Nuclear Regulatory Commission ("NRC") denying rulemaking petitions filed by Massachusetts and California. As the NRC has given due consideration to the relevant studies, we must defer to their expertise in determining the proper risk level associated with the storage of nuclear material in spent fuel pools, and therefore deny the petition for review.

**I**

Two States filed rulemaking petitions (Massachusetts in 2006, and California in 2007) asking the NRC to reverse its 1996 Generic Environmental Impact Statement, which found (among other things) that spent fuel pools at nuclear power plants do not create a significant environmental impact within the meaning of the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. The NRC consolidated and denied the rulemaking petitions in a 2008 decision. See 42 U.S.C. § 2239(a)(1)(A). United States Courts of Appeal have jurisdiction to review such final orders of the NRC. 28 U.S.C. § 2342(4). The States petitioning for review here (New York, Connecticut, and Massachusetts) claim standing on the ground that nuclear power plants are within or near their borders and that an accident at one of these plants could harm their citizens.

Under the National Environmental Policy Act ("NEPA"), each federal agency must prepare an Environmental Impact Statement ("EIS") before taking a major action that significantly affects the quality of the "human environment." 42 U.S.C. § 4332(2)(C). The renewal of a license for a nuclear power plant is a major action

4

requiring an EIS under NRC regulations. See 10 C.F.R. § 51.20.

The EIS required for license issuance and renewal at nuclear power plants covers both generic and plant-specific environmental impacts. The NRC has decided that these two kinds of impacts are to be treated separately. Category I impacts are those that: 1) are common to all nuclear power plants; 2) can be assigned a uniform significance level of small, moderate, or large (even if the impact is not precisely the same at each plant); and 3) do not require plant-specific kinds of mitigation. Category II impacts require site-by-site evaluation. Since Category I impacts are common to each license renewal, the NRC has produced a Generic Environmental Impact Statement ("GEIS") that applies to these common issues. Massachusetts v. United States, 522 F.3d 115, 120 (1st Cir. 2008). The GEIS, combined with a site-specific EIS, constitutes the complete EIS required by NEPA for the major federal action of a plant's license renewal. Id. (noting also that the GEIS was codified as a final rule in Environmental Review for Renewal of Nuclear Power Plant Operating Licenses, 61 Fed. Reg. 28,467 (June 5, 1996)).

The NRC classifies on-site storage of spent fuel in pools as a Category I issue that causes a small environmental impact. Massachusetts and California contended that the information in their rulemaking petitions showed a greater risk of fire from this source than previously appreciated, and that therefore the environmental impact should no longer be discounted as small; they further contended that the risk should be evaluated plant-by-plant (rather than be considered within Category I). New York and Connecticut supported these original petitions. The NRC considered both petitions together, and concluded that its initial determination was correct. After these petitions were denied in August 2008, this petition for review followed.

                            **II**

An agency decision to deny a rulemaking petition is subject to judicial review; but that review is "extremely limited and highly deferential." Massachusetts v. EPA, 549 U.S. 497, 527-28 (2007) (internal quotation marks omitted). It "is to be overturned if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

6

law"; but this standard is applied "at the high end of the range of deference and an agency refusal is overturned only in the rarest and most compelling of circumstances." EMR Network v. FCC, 391 F.3d 269, 272-273 (D.C. Cir. 2004) (internal quotation marks and citation omitted). Such compelling circumstances would typically involve "plain errors of law" relating to the agency's delegated authority. Am. Horse Prot. Ass'n v. Lyng, 812 F.2d 1, 5 (D.C. Cir. 1987).

This standard has been said to be so high as to be "akin to non-reviewability." Cellnet Comm'n, Inc. v. FCC, 965 F.2d 1106, 1111 (D.C. Cir. 1992). To deny review of a rulemaking petition, a court typically need do no more than assure itself that an agency's decision was "reasoned," meaning that it considered the relevant factors. Lyng, 812 F.2d at 5 (internal quotation marks omitted).

## III

The States' primary arguments on appeal are that: 1) new information submitted by Massachusetts and California in their petitions (and New York in support of those petitions) show that the risk of a spent fuel pool fire is not so

7

remote that, when considered in light of the potentially devastating effects, on-site storage in pools has a low environmental impact; and 2) the NRC's decision to deny the rulemaking petitions was arbitrary and capricious because it relied on plant-specific mitigation and security to support a finding that spent fuel pools generically have low environmental impacts.

## A

The risks posed by keeping nuclear fuel on site in spent fuel pools--including the risk of fire--have been considered in studies prepared over the past four decades. The studies relied on by the NRC all found that the risk of a fire was low. These studies (including those conducted since September 2001) consider the risk of fire precipitated by a terrorist attack, and classify that risk as low.[1]

---

[1] This opinion need not and does not reach the circuit split as to whether the NRC must take into account acts of terrorism when drafting an EIS about license renewal. Compare N.J. Dep't of Envtl. Prot. v. U.S. NRC, 561 F.3d 132, 139-40 (3d Cir. 2009) (holding that the NRC does not need to consider the risk of terrorism when preparing an EIS), with San Luis Obispo Mothers for Peace v. NRC, 449 F.3d 1016, 1031 (9th Cir. 2006) (holding that the NRC does need to consider the risk of terrorism when preparing an EIS). We conclude that the NRC did sufficiently take into account acts of terrorism when deciding that the risk of

The NRC had already analyzed most of the studies submitted in connection with Massachusetts and California's petitions; the petitioners simply disagree with the NRC's interpretation of those studies. Massachusetts and California did submit one study that the NRC had not previously considered; but the NRC--having examined this study in considering whether to grant the petitions-- concluded that it was not as accurate as the studies on which the NRC had previously relied.

These are technical and scientific studies. "Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise. Deference is desirable." Browning-Ferris Indus. of South Jersey, Inc. v. Muszynski, 899 F.2d 151, 160 (2d Cir. 1990), limited on other grounds by Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93 (1998). "Particularly when we consider a purely factual question within the area of competence of an administrative agency created by Congress, and when resolution of that question depends on 'engineering and scientific'

---

fire at a spent fuel pool was uniformly low, and therefore we need not decide whether the NRC could have avoided considering this issue.

considerations, we recognize the relevant agency's technical expertise and experience, and defer to its analysis unless it is without substantial basis in fact." Fed. Power Comm'n v. Fla. Power & Light Co., 404 U.S. 453, 463 (1972). The relevant studies cited by the NRC in this case constitute a sufficient "substantial basis in fact" for its conclusion that the overall risk is low. See Id. We therefore conclude the NRC's decision was not an abuse of its discretion.

**B**

The States on appeal contend that the risk of a spent fuel pool fire must be a Category II rather than a Category I risk, because the risk is affected by mitigation that varies from plant to plant. It is true that the NRC relies in part upon mitigation at nuclear power plants--including various coolant sprays and makeup water systems in case of pool drainage--to conclude that the risk of an accidental or terrorist-caused fire in the pools is uniformly low. However, the NRC has mandated that these mitigation tactics be implemented at *all* nuclear power plants. The NRC decision states that the agency has "approved license

amendments and issued safety evaluations to incorporate these [mitigation] strategies into the plant licensing bases of all operating nuclear power plants in the United States." The NRC also requires heightened security at all plants as part of its licensing process in the wake of the September 11, 2001 attacks. See 10 C.F.R. § 50.54(hh); Power Reactor Security Requirements, 74 Fed. Reg. 13,975 (Mar. 27, 2009). An agency may take into account attempts to mitigate an environmental impact when determining that an environmental impact is small enough to not require an EIS, so long as the effectiveness of the mitigation is demonstrated by substantial evidence. Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 17 (2d Cir. 1997). The NRC relies on numerous studies detailing the effectiveness of its required mitigation measures; these studies constitute substantial evidence.

## CONCLUSION

We conclude that the NRC's decision denying the rulemaking petitions was reasoned; it considered the relevant studies, and it took account of the relevant factors. We therefore must conclude that the agency acted

within its broad discretion.  We find the States' other arguments to be without merit.  The States' petition to review the NRC's denial of the rulemaking petitions is denied.